# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DARNELL SAMUELS, : <br>     Petitioner : <br> : <br> v. : <br> : <br> PENNSYLVANIA ATTORNEY : <br> GENERAL, *et al.*, : <br>     Respondents : | No. 1:19-cv-1823 <br><br> (Judge Rambo) |

## **MEMORANDUM**

On October 21, 2019, *pro se* Petitioner Anthony Darnell Samuels ("Petitioner"), who is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Respondents filed a response to the petition on November 26, 2019. (Doc. No. 9.) After being directed to do so by the Court (Doc. No. 10), Respondents have expanded the record (Doc. Nos. 12, 13, 14). Petitioner has filed neither a traverse nor a motion seeking an extension of time to do so. Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2254 petition is ripe for disposition. For the following reasons, the Court will deny Petitioner's § 2254 petition.

## I. BACKGROUND

### A. Procedural History

On February 17, 2016, Petitioner was charged with one count of making terroristic threats with the intent to terrorize another. *See Commonwealth v. Samuels*, Docket No. CP-22-CR-0001232-2016 (Dauphin Cty. C.C.P.).[1] The Superior Court of Pennsylvania set forth the background of the case as follows:

> Larita Brown testified to the events that took place on the night of February 16, 2016. Ms. Brown was with her boyfriend waiting for the bus at the train station in Harrisburg, Pennsylvania when [Appellant, Ms. Brown's ex-boyfriend], went over to Ms. Brown and demanded twenty ($20) dollars from her. Ms. Brown said "no" and [Appellant] followed her around the train station. Ms. Brown testified that this was an ongoing occurrence (where [Appellant] would demand money from her) and that Ms. Brown finally had enough and told [Appellant] "no more." Ms. Brown [who had a PFA against Appellant] felt threatened and sought out an Amtrak officer.
>
> When the Amtrak officer approached [Appellant] to ask him what was going on, [Appellant] took off and dropped his wallet and identification. Shortly thereafter, [Appellant] called Ms. Brown and again demanded money from her. At this time, Ms. Brown and her boyfriend got on the bus and two stops later, [Appellant] got on the bus. [Appellant] "charged to the back of the bus" and once again demanded money from Ms. Brown. While visibly shaking, Ms. Brown gave [Appellant] twenty ($20) and [Appellant] left the bus. Ms. Brown went home and [Appellant] continued to call her and demand money. Ms. Brown testified that she feels so threatened that if she does not answer the phone, something terrible is going to happen to her. Ms. Brown

---

[1] In addition to the § 2254 petition, the Court utilized the Unified Judicial System of Pennsylvania Web Portal to review the relevant dockets for Petitioner's criminal proceedings. A district court may take judicial notice of state court records, as well as its own. *See Minney v. Winstead*, No. 2:12-cv-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988).

testified that during this phone call, [Appellant] once again threatened to kill her [as he had done earlier that evening on the bus]. Finally, on direct examination, Ms. Brown testified that she lives in fear of [Appellant].

The Commonwealth also introduced the testimony of Ben Stewart, a patrolman with the Swatara Township Police Department, who identified the phone number that had been calling Ms. Brown's as [Appellant's].

(Doc. No. 9-4 at 1.)

On July 21, 2016, following a bench trial, Petitioner was found guilty of making terroristic threats with the intent to terrorize another. *See Samuels*, Docket No. CP-22-CR-0001232-2016. On August 30, 2016, the trial court sentenced Petitioner to serve no less than twenty-four (24) months and no more than sixty (60) months' incarceration. *Id.* Petitioner subsequently filed a timely post-sentence motion for modification of sentence, which the trial court denied. *Id.*

Petitioner appealed to the Superior Court of Pennsylvania, arguing that: (1) there was insufficient evidence to support his conviction; and (2) the trial court abused its discretion in sentencing him to two (2) to five (5) years of incarceration because the sentence was "excessive and unreasonable in light of [Petitioner's] age, mental health issues, and rehabilitative needs." (Doc. No. 9-4 at 1.) On November 9, 2017, the Superior Court affirmed Petitioner's judgment of sentence. (*Id.*) Petitioner did not seek leave to appeal to the Supreme Court of Pennsylvania.

On January 16, 2018, Petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition in the Court of Common Pleas for Dauphin County. *Samuels*, Docket No. CP-22-CR-0001232-2016. Counsel was appointed to represent Petitioner, and on March 29, 2018, counsel filed a petition to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). *Id.* On April 3, 2018, the PCRA court issued a notice that intended to dismiss Petitioner's PCRA petition. *Id.* On April 30, 2018, the PCRA court dismissed the PCRA petition. *Id.* Petitioner timely appealed to the Superior Court of Pennsylvania, arguing that: (1) he was subject to a defective arrest warrant because the victim never swore to the complaint and the officer who signed the affidavit supporting the warrant did not personally witness the alleged crime; (2) he was convicted for an incident that was not mentioned in the affidavit of probable cause; and (3) he did not have an opportunity to confront the officer who signed the arrest warrant at his preliminary hearing. *See Commonwealth v. Samuels*, No. 690 MDA 2018, 2019 WL 959360, at *2-3 (Pa. Super. Ct. Feb. 26, 2019). The Superior Court affirmed the dismissal of Petitioner's PCRA petition on February 26, 2019. *See id.* at *1. On September 4, 2019, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal. *See Commonwealth v. Samuels*, 217 A.3d 795 (Pa. 2019). This Court received Petitioner's § 2254 petition on October 21, 2019. (Doc. No. 1.)

### B. Habeas Claims Presented

Petitioner raises the following claims for relief in his § 2254 petition:

1. Petitioner's Fourth Amendment rights were violated when he was subject to an unreasonable search and seizure because the victim never swore to the complaint in the presence of the issuing authority and the officer who signed the affidavit supporting the arrest warrant did not personally witness the alleged crime;
2. Petitioner's Fourteenth Amendment due process rights were violated when he was convicted of a charge not mentioned in the affidavit of probable cause because he was "arrest[ed] for phone call but was convict[ed] for alleged incident at the train station"; and

3. Petitioner's rights under the Sixth Amendment's Confrontation Clause were violated when he was unable to confront the officer who signed the affidavit of probable cause at his preliminary hearing.

(Doc. No. 1 at 5-8.)

## II. STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith

5

attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

For claims of ineffective assistance of counsel raised in a habeas petition, the Court must consider the two components to demonstrating a violation of the right to effective assistance of counsel as set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing

6

that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694. The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. *See Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness

claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

## III. DISCUSSION

### A. Claim One: Fourth Amendment Violation

As his first claim for relief, Petitioner contends that his Fourth Amendment rights were violated when he was arrested on a warrant for which the victim did not swear to the complaint in the presence of the issuing authority and the officer who signed the affidavit supporting the arrest warrant did not personally witness the alleged crime. (Doc. No. 1 at 5.)

The Supreme Court has held that a federal habeas court cannot review a Fourth Amendment claim unless the petitioner was denied a full and fair opportunity to litigate it in the state courts. *See Stone v. Powell*, 428 U.S. 465, 494 (1976). Generally, a petitioner has received a full and fair opportunity to litigate a Fourth Amendment claim if the state has made available a mechanism for requesting the suppression of evidence, irrespective of whether the petitioner actually availed himself of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). A

petitioner has also had a full and fair opportunity to litigate his claim regardless of whether the state courts properly resolved the claim. *See Marshall v. Hendricks*, 306 F.3d 36, 82 (3d Cir. 2002). On the other hand, a petitioner has not received a full and fair opportunity if the state's system contains a structural defect that prevented the state from fully and fairly hearing the Fourth Amendment claim. *See id.*

Rules 578 and 581 of the Pennsylvania Rules of Criminal Procedure permit a defendant to file a pre-trial motion to suppress evidence, thereby providing a mechanism for presenting Fourth Amendment issues in the Pennsylvania state courts. *See* Pa. R. Crim. P. 578, 581. Petitioner, however, did not avail himself of that mechanism. Moreover, as noted above, Petitioner raised his claim in his PCRA petition. The Superior Court affirmed the dismissal of Petitioner's PCRA petition, noting, with respect to this claim for relief, that

> in its memorandum opinion accompanying its Rule 907 notice, the PCRA court reasoned:
>
>> Initially, we note that it is not necessary for the officer to have direct, personal knowledge of the relevant facts and circumstance s on whether a crime has been committed. *Commonwealth v. Walker*, 501 A.2d 1143, 1148 ([Pa. Super.] 1985). The belief may, instead, rest solely upon facts and information supplied by another person, so long as there is a "substantial basis" for trusting the source and credibility of the information. *Id.* Here, the police officer based upon the totality of the circumstances, had probable cause to believe that a crime had been committed when he received a call regarding a violation from a Protection from Abuse (PFA). At the time of the call, a routine warrant check indicated that [Appellant] had an active warrant dating from

9

> October 2015 for a previous violation of the same PFA. As such, the
> officer had sufficient probable cause to support [Appellant's] arrest.
>
> . . .
>
> With respect to the arrest warrant, Pa. R. Crim. P. 513(B)(2) provides
> that "[n]o arrest warrant shall issue but upon probable cause supported by one
> or more affidavits sworn to before the issuing authority in person or using
> advanced communication technology. The issuing authority, in determining
> whether probable cause has been established, may not consider any evidence
> outside the affidavits." Pa. R. Crim. P. 513(B)(2).
>
> "The test in this Commonwealth for determining whether probable
> cause exists for the issuance of an arrest warrant is the 'totality of the
> circumstances.'" *Commonwealth v. Taylor*, 850 A.2d 684, 686-87 (Pa. Super.
> 2004). We have explained that "[t]he totality of the circumstances test
> requires a Court to determine whether the facts and circumstances which are
> within the knowledge of the officer at the time of the arrest, and of which he
> has reasonably trustworthy information, are sufficient to warrant a man of
> reasonable caution in the belief that the suspect has committed or is
> committing a crime." *Commonwealth v. Smith*, 979 A.2d 913, 916 (Pa. Super.
> 2009) (citation omitted). Further, probable cause is based on probability, not
> a *prima facie* showing of criminal activity; therefore, deference should be
> afforded to the magistrate's finding of probable cause. *Commonwealth v.
> Housman*, 986 A.2d 822, 843 (Pa. 2009).
>
> . . .
>
> Following our review of the record, the PCRA court's opinion, and the
> relevant legal principles, we find no error in the PCRA court's dismissal of
> Appellant's PCRA claims. As indicated by the court, the arrest warrant was
> properly executed and based on probable cause.

*Samuels*, 2019 WL 959360, at *4-6. Nothing in the record before the Court, therefore, suggests that Petitioner did not receive a full and fair litigation of his Fourth Amendment claim. *See, e.g.*, *Marshall*, 307 F.3d at 82 (noting that whether a state court incorrectly decided a petitioner's Fourth Amendment claim is

immaterial to the full and fair opportunity analysis). Thus, the Court will deny Petitioner's first ground for relief as barred by *Stone*. *See, e.g.*, *Goins v. Warren*, No. 13-4057 (DRD), 2015 WL 1292528, at *3-4 (D.N.J. Mar. 20, 2015) (concluding that habeas petitioner's challenge to the arrest warrant, based on a belief that police officer forged the judge's signature, was barred by *Stone*).[2]

### B. Claim Two: Due Process Violation

As his second ground for relief, Petitioner asserts that his Fourteenth Amendment due process rights were violated because he was "convict[ed] of a charge outside the affidavit of probable cause." (Doc. No. 1 at 6.) According to Petitioner, he was "arrest[ed] for phone call but was convict[ed] for alleged incident at the train station no Amtrak police report and witness." (*Id.*) In affirming the PCRA court's dismissal of this claim, the Superior Court stated:

> As to variances between the charging documents and the evidence at trial, this Court has noted:

---

[2] In his § 2254 petition, Petitioner indicates that appellate counsel refused to raise this issue on direct appeal. (Doc. No. 1 at 5.) To the extent that Petitioner is raising a claim of ineffective assistance of counsel, such a claim lacks merit. Generally, evidence based on the testimony of the alleged victim is presumptively sufficient to establish probable cause to issue an arrest warrant. *See, e.g.*, *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000); *Anderson v. Goga*, No. 11-528, 2013 WL 3242445, at *3 (W.D. Pa. June 25, 2013) (collecting cases). Moreover, the fact that the victim did not swear to the complaint in the presence of the issuing authority does not defeat probable cause because "[c]riminal [c]omplaints are frequently sworn to by arresting officers, who swear to statements made to them by victims." *See Russ v. Chavers*, No. 10-cv-1370 (SLT) (JO), 2013 WL 1338819, at *9 (E.D.N.Y. Mar. 29, 2013). Thus, any challenge to the affidavit of probable cause by counsel on these bases would have been unsuccessful, and "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

> A criminal complaint need simply contain "facts sufficient to advise the defendant of the nature of the offense charged, but neither the evidence nor the statute allegedly violated need be cited . . . ." It follows, then, that the Commonwealth may introduce at trial evidence not specified within the four corners of the criminal complaint, provided that such evidence is material and competent to the charge and presents no other reason, evidentiary or otherwise, for its preclusion. The factfinder, in turn, may properly convict on such evidence as long as each element of the charge was proven beyond a reasonable doubt.
>
> *Commonwealth v. Snell*, 737 A.2d 1232, 1234 (Pa. Super. 1999) (citations omitted); *see also* Pa. R. Crim. P. 504(6)(a) (formerly numbered Rule 104(6)(a)). Furthermore, "[a] variance is not fatal unless it could mislead the defendant at trial, impairs a substantial right or involves an element of surprise that would prejudice the defendants' efforts to prepare his defense." *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa. Super. 2006) (citation omitted).
>
> Following our review of the record, the PCRA court's opinion, and the relevant legal principles, we find no error in the PCRA court's dismissal of Appellant's PCRA claims. . . . Further, there was no error in the trial court's consideration of evidence outside the four corners of the criminal complaint.

*Samuels*, 2019 WL 959360, at *5-6.

As the Supreme Court has explained, due process guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). As noted above, Petitioner was charged with and convicted of making terroristic threats, in violation of 18 Pa. Cons. Stat. Ann. § 2706(a)(1), which states that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence

12

with intent to terrorize another." Therefore, "to obtain a conviction for making a terroristic threat, the Commonwealth must prove that (1) the defendant made a threat to commit a crime of violence; and (2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror." *In re L.A.*, 853 A.2d 388, 391-92 (Pa. Super. Ct. 2004).

The affidavit of probable cause attached to the criminal complaint charging Petitioner with making terroristic threats set forth as follows:

> On 2/16/16, at approximately 0023 hours, I was dispatched to 221 North 67th Street, apartment D, for a PFA violation. Larita Brown reported that she has been receiving harassing phone calls from her ex-boyfriend, Anthony Samuels. Brown reported receiving a phone call from Samuels at approximately 0002 hours. During the conversation, Samuels told Brown, "Bitch, I'm going to kill you." Brown received two more phone calls from [Samuels], both unanswered, between 0016 hours and 0056 hours.
> Brown has a Final Protection from Abuse order against Samuels. The order is numbered 2014 CV 05694 AB and prohibits Samuels from having any contact with Brown, including contact by telephone or by other means. The order also prohibits Samuels from harassing, threatening or attempting to use physical force that would reasonably be expected to cause bodily injury to Brown.
> A warrant check revealed that Samuels has an active warrant for a PFA violation against Brown, dating back to October of 2015.
> I reviewed Brown's call log on her cell phone and verified the received phone calls from Samuels. The calls were made from phone number 717-454-6764.

(Doc. No. 12-1 at 4.) At trial, Ms. Brown testified that the incident that occurred on February 16, 2016 began when she was at the Amtrak station waiting for a bus and Petitioner approached her, repeatedly asking for $20.00. (Doc. No. 14-1 at 10-11.) Petitioner followed Ms. Brown and her boyfriend on the bus, and Ms. Brown

13

ultimately gave him $20.00 because she was "shaking" in fear of Petitioner. (*Id.* at 14-15.) She testified further that Petitioner called her that night and told her that "he was going to kill [her]" when he saw her. (*Id.* at 18-19.) Ms. Brown testified that she "live[s] in fear [of Petitioner] all the time." (*Id.* at 19.) Upon review of the record, the Court concludes that no variance occurred because Petitioner was not convicted of an alleged incident at the Amtrak station. Rather, Petitioner was convicted for making terroristic threats to Ms. Brown by way of the telephone. Ms. Brown's testimony merely served to provide context for the phone calls she received from Petitioner on February 16, 2016. Petitioner, therefore, has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, Petitioner's second ground for relief will be denied.[3]

### C. Claim Three: Sixth Amendment Violation

As his third ground for relief, Petitioner asserts that his Sixth Amendment Confrontation Clause rights were violated because he did not have the opportunity

---

[3] Petitioner faults appellate counsel for failing to raise this claim on direct appeal. (Doc. No. 1 at 7.) To the extent he asserts ineffective assistance of counsel on this basis, any such argument by counsel that Petitioner's due process rights were violated would have been unsuccessful, and counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Werts*, 228 F.3d at 203.

to confront the officer who signed the affidavit of probable cause at his preliminary hearing. (Doc. No. 1 at 8.) With respect to this claim, the Superior Court stated:

> It appears that [Appellant] alleges that since the officer who signed the complaint did not testify at his preliminary hearing, he was somehow denied his right to confrontation. However, [Appellant] had a full and fair opportunity to confront both the officer and the victim at the subsequent bench trial. Additionally, as the officer who was the affiant in this case was relying on the information from the victim, the victim's testimony was all that [was] required to meet the *prima facie* burden at such a hearing. Finally, the absence of the officer/affiant at the preliminary hearing in no way renders the direct testimony of the victim inadmissible. As such, this claim is without merit.
>
> . . .
>
> As to Appellant's claims regarding the preliminary hearing, Pa. R. Crim. P. 542(E) states: "Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense . . . ." Pa. R. Crim. P. 542(E). In *Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015), this Court held that "an accused does not have the right to confront the witnesses against him at his preliminary hearing under those provisions." *Ricker*, 120 A.3d at 362.

*Samuels*, 2019 WL 959360, at *4-5.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). The right to cross-examination "applies not only to in-court testimony but also to out-of-court

15

statements introduced at trial." *Preston v. Sup't Graterford SCI*, 902 F.3d 365, 380 (3d Cir. 2018) (citing *Crawford v. Washington*, 541 U.S. 36, 50-51 (2004)). Thus, "a witness whose prior statement is to be used must not only be produced but must also be sworn and made available for cross-examination." *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460, 463 (3d Cir. 1977).

Here, Petitioner argues that his Confrontation Clause rights were violated because he did not have the opportunity to confront the officer who signed the affidavit of probable cause at his preliminary hearing. (Doc. No. 1 at 8.) The Confrontation Clause's protections "are trial rights 'designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.'" *Kitcherman v. Lamas*, No. 13-6625, 2015 WL 3814539, at *5 (E.D. Pa. June 18, 2015). Petitioner, therefore, had no constitutional right to confront the officer during his preliminary hearing. *See id.*; *see also McCray v. Illinois*, 386 U.S. 300, 314 (1967) (concluding that petitioner's argument that Confrontation Clause required production of informant at probable cause hearing, instead of officers' testimony as to what the informant told them, was "absolutely devoid of merit"); *Barber v. Page*, 390 U.S. 719, 725 (1968) (noting that the Confrontation Clause implicates trial rights). Accordingly, because Petitioner's third ground for relief does not trigger constitutional protections, it is not cognizable on federal habeas review and, therefore, must be dismissed. *See Kitcherman*, 2015 WL 3814539, at

*5 (concluding same regarding petitioner's claim that he had a right, under the Confrontation Clause, to confront his mother at his preliminary hearing), *certificate of appealability denied*, *Kitcherman v. Sup't Rockview SCI*, No. 15-2772 (3d Cir. Mar. 7, 2016).[4]

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). In the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable. As such, no COA will issue.

---

[4] Petitioner faults appellate counsel for failing to raise this claim on direct appeal. (Doc. No. 1 at 8.) To the extent he asserts ineffective assistance of counsel on this basis, any such argument by counsel that Petitioner's Confrontation Clause rights were violated would have been unsuccessful, and counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Werts*, 228 F.3d at 203.

## V. CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue. An appropriate Order follows.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge